The court will proceed to the sixth case, Neely-Beytarik-El v. Conley. Mr. Beauvais. Good morning. May it please the Court. My name is Joel Beauvais. I'm here on behalf of the appellant, Mr. Derrick Neely-Beytarik-El. This case boils down on appeal to two issues, the qualified immunity issue, and secondly, whether Mr. Neely-Bey has waived his argument that his request for injunctive relief was wrongly dismissed by the district court. So I'd like to offer some points on both of those two issues. So on the qualified immunity issue, I want to start with the basis of the district court's decisions. The district court held that they were entitled to qualified immunity because, quote, there are no decisions where state officials enforced a ban from participating in religious activities that was put in place by the religious entity itself. So we submit that this is incorrect on two grounds. First, as a factual matter, there's nothing in the record to suggest that the volunteer minister in this case had authority to speak for the MSTA or that this was a restriction put in place by the MSTA itself. That was something that Mr. Neely-Bey disputed in opposing summary judgment and a point on which he offered evidence. And so if that's the basis of the decision, that there's the factual underpinning is not there. We think, as a matter of fact, that that's irrelevant as a matter of law, that the defendants lose on the law regardless. So first of all, so on the legal question of whether the law was sufficiently clear to put the defendants on notice that their conduct violated the Establishment Clause and the Free Exercise Clause. So on the Establishment Clause question, our position is that the violation was so patently obvious that any reasonable official would have been on notice. But counsel, so patently obvious, can you point to any case that has these facts where it's the religious organization itself? And he wasn't banned from participating altogether. He totally couldn't speak, so he couldn't be one of the leaders. But can you point to any case that's anything like this? Certainly on the Free Exercise Clause side. So on the Establishment Clause case, we really have no factually similar cases. We simply have the principle. We're aware of no cases in which it's been upheld that the government can directly enforce a religious edict or enforce religious orthodoxy within a religious body. There's plenty of case law that says the mere appearance of joint exercise of government authority by the religious body and the government violates the Establishment Clause. So here we think there isn't factually analogous case law, but the principle is quite clear, and I'd be happy to go into that further. On the Free Exercise Clause side, there certainly is a body of case law, including decisions from this court as well as the Second Circuit, to the effect that an individual's, a prisoner's free exercise rights can't be restricted simply on the basis of the individual's failure to adhere to an orthodox view of that religion. But those cases didn't involve the group. Not directly, but for example, the Binningell case involved, stands for the proposition that, and includes language to the effect that, religious officials or religious leaders statement that a particular exercise, a particular practice, in that case a vegan diet, is not part of or required by the religion, was not a basis for preventing him from having a vegan diet. In the Second Circuit case, Jackson versus Mann, for example, the actual, the prison chaplain, who was a rabbi, made a determination that the individual could not receive a, did not meet the qualifications for being Jewish, and therefore he was denied the ability to have a kosher diet. So these cases, and that was struck down on the grounds that there was no legitimate basis for the prison to rely on the religious leaders, or in this case the rabbi's view as to whether he was or wasn't truly a Jew. So we think that that principle, although those are not factually similar cases, the principle is fairly clear here, that the prison can't take the religious group's views or a religious leader's views that a particular individual is unorthodox or doesn't conform to the beliefs of the religion, and use that as a basis for excluding them from practicing the religion. And here, that's exactly what happened. There's no allegation here, you know, the government relies on the principle of defending the associational rights of the MSTA, and that's, and its supposed inability to review or question the memorandum that was sent by the volunteer minister. So, first of all, as a factual matter, you know, as we've suggested, there's no basis for a finding that this was in fact an edict of the MSTA, or that the minister had authority to speak for the MSTA. But more importantly, if you look at the memorandum, it says, this individual has espoused certain views that we consider to effectively denounce membership, or that I consider to effectively denounce membership in the group, therefore he can't participate in the way that many other participants do, including by standing or speaking in religious worship. There's no, the government doesn't contest that that's a substantial burden on his religious worship, and there's no suggestion here, for example, that there was some other basis than enforcing that religious orthodoxy test that's incorporated. Furthermore, the memorandum doesn't even in fact ask the government to intervene, it merely says he's prohibited from standing or speaking because he's not a member, or I think the memorandum actually says he's prohibited from speaking, and concludes with a paragraph that says, be on notice that the officials at the prison can apply whatever, if you violate this, the officials at the prison can apply whatever policies they have to address that. And the prison officials then took it upon themselves, in monitoring the conduct of the worship, to intervene and discipline Mr. Neely Bay for violating that religious edict. So, we think that the principle that was established in Vendingale and Jackson v. Mann and similar cases clearly applies here. Furthermore, we think that this is a bit of the unusual, rare case where, so in Conyers v. Abbots, for example, the court held that the defendants were not entitled to qualified immunity, simply on the basis of the Turner v. Safley test, that there wasn't a legitimate penal, they hadn't offered a legitimate penological basis to justify their conduct, and we think that this is a similar case here as well. The government does not argue that they have a legitimate penological basis, they say that they don't need one. And so, we think that Conyers v. Abbots also supports our position. This isn't a case like Kemp v. Liebel, where I think Judge Palami wrote the opinion where there was precedent going the other direction. So in that case, there was precedent that directly contradicted the plaintiff's claims, and so qualified immunity was appropriate. If there are no further questions on qualified immunity, I would like to touch on the waiver question a little bit. So here, at the outset of the case, in a screening order under 28 U.S.C. 1915a, the district judge effectively dismissed Mr. Neely Bay's clear request for injunctive relief and dismissed all of the official capacity claims on that basis. That was an interlocutory order. It was non-final and non-appealable, and the rest of the conduct of the case unfolded for that. The defendants here have virtually conceded that the complaint fairly requests injunctive relief. They've conceded that that may have been error on the district court's part. They concede that if he sought injunctive relief, that under Ex Parte Young and so forth, they are not entitled to argue qualified immunity or sovereign immunity against those claims. They've conceded, or virtually conceded, that it would have been appropriate for the district court to consider claims for injunctive relief under RLUIPA in addition to the free exercise clause. And so the sole argument is that those claims are no longer properly before the court because somehow Mr. Neely Bay, through his pro se conduct in the district court, failed to abandon or waive those claims. I think all of the arguments, as we pointed out in our reply brief, don't stand up to the black letter of law here. Mr. Neely Bay, it is appropriate under this court's many, many holdings to challenge a non-final interlocutory order on appeal, which is precisely what he's doing here. That's particularly appropriate where that kind of an order is issued sui sponte by the district court, so there was no opportunity to have briefing or argument on the point. The only argument, really, that the defendants make is that because he submitted a motion for reconsideration on another point, that he somehow failed to preserve this point for appeal. And we simply feel that there's no basis at all in precedent. There's no precedent that stands for that point, and this court has made clear that you don't have to bring a reconsideration motion in order to preserve such an argument. So we think it's clear that he hasn't waived this argument, and we would ask for remand on both of the points. We think there needs to be further factual development with regard to both the pre-exercise and the RLUIPA and the Establishment Clause claims, and we think that a remand would be appropriate in this case. Thank you, Mr. Beaubet. Ms. Rahman? Good afternoon. Andrea Rahman for the State Defendants. To begin with, I would like to note that the way Mr. Neely Bay frames the Qualified Immunity Analysis seems to be asking that, framing it in such a way that the plaintiff, the prisoner, has the right not to have their religious practices interfered with unless there is a legitimate penological basis for it. However, in Kent v. Liebel, this court looked at that framing of the issue and explicitly rejected it as being too broad under the Qualified Immunity Analysis. Now, second, Neely Bay cites a series of cases, Jackson v. Mann and some Second Circuit cases, standing for the principle that a religious official cannot dictate the sincerity of the prisoner's religious beliefs, and that's true. However, those cases are distinguishable from this case on a couple grounds. For one, those cases relied on the religious official's determination of their sincerity. That is not at issue here. We do not doubt that Neely Bay sincerely believes that he should engage in group worship. Second, those cases did not entail the issue of how IDOC officials should take into consideration the religious minister's, the MSTA's, constitutional right, both under the right to association and free exercise rights, to church governance, to establish church doctrine, and how they should balance that. Under the Qualified Immunity Analysis, for IDOC officials to be put on any kind of notice that their behavior, their actions, would have violated a clearly established constitutional right, there would have to be a case that looks at a religious organization's right to church governance, right of association to exclude, weighs that against an individual's free exercise right to engage in group worship, and then hold that the individual's right outweighs the right of that organization. That would be a case on point, but there is no case that I'm aware of, and no case cited by Neely Bay, that would put the IDOC officials on notice. So here, because the MSTA has its rights to engage in church governance and establish church doctrine as it sees fit, IDOC officials were not on notice that what they were doing would have violated a clearly established constitutional right. And as a result, the district court was correct in granting the state defendants qualified immunity on those grounds. Briefly, I'd like to address Neely Bay's claims for injunctive relief. We maintain, one, that Neely Bay abandoned his claims for injunctive relief, but even if he had not abandoned his claims, we have come to learn that it appears that his claim for injunctive relief would now be moot. With regard to the first point, yes, he was not required to file a motion to reconsider. However, the fact that he did and did not raise injunctive relief is a factor to be considered. Also, more importantly, we noted in the case of Denny S. v. Dunlap, that this court noted that if a district court overlooks a claim for relief, particularly injunctive or declaratory relief, that is a mistake that should be remedied by filing a Rule 60b motion, but that was not done here. So the basically confluence of factors, the failure to mention injunctive relief in the motion to reconsider, the failure to challenge qualified immunity on injunctive relief grounds in the summary judgment motion, and the failure to file a Rule 60b motion all points to the fact that Mr. Neely Bay has abandoned his claim for injunctive relief and was only seeking damages. As for the second point regarding mootness, he has since been transferred to Westville. We filed a notice with the court explaining that. He is at the Westville Minimum Correctional Facility after a reclassification, and the minimum security facility at Westville does not have any MSTA services. They do not have an approved facilitator or volunteer minister to carry out those services. And as far as I'm aware, Neely Bay is the only person interested in congregational services with the MSTA. So because he has moved to a new facility and the issues that were presented at Correctional Industrial Facility are no longer present, we would argue that his claims have since become moot. His claim for injunctive relief? Claims for injunctive relief, yes, Your Honor. So if there are no further questions, we would ask this court affirm the district court's judgment. Thank you. Mr. Corbett, I think you used your ten minutes, but you may have two minutes for rebuttal if you wish. Thank you very much, Your Honor. That's very kind. I think the main point that I'd like to address since it was raised just here for the first time is the mootness question. It's interesting to hear representations of counsel, you know, here before the appellate court, but we have no information with regard to a withdrawal of the restriction on Mr. Neely Bay's exercise of his religion in group worship services, and we really don't know anything about the facts with regard to the potential likelihood of future group services at the Westville facility. So at minimum, if the court is going to take up the mootness issue, we would request further briefing on that issue. We don't think that that's an appropriate basis for deciding the injunctive relief. Have you been in contact with him? I did speak to him a couple days ago, yes. So you're aware of his current... I'm aware of his transfer. I think his understanding from his conversations with officials at the prison is that the restrictions that were imposed upon him at the previous facility traveled with him in his file and would continue to be applied, and I don't think that we have information with regard to what the future of group worship services may be at Westville. Well, thank you. Thank you very much. I didn't mean to cut you off if you had a further remark. I think, I mean, the only other points that I would make are, you know, we've cited, it's asserted that he should have raised this claim in a 60B motion after the final judgment. We've cited cases in our reply brief indicating that that wouldn't have been appropriate here and certainly isn't a basis for waiver. And again, we think that the Kemp v. Legal decision is clearly distinguishable. Thank you very much. Thank you. Thank you to both counsel. The case is taken under advisement and the court will stand in recess. Thank you. Thank you.